UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Jonathan Keith Blazek,** | ) | **CASE NO. 1:12 CV 2749** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **City of Lakewood,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 16). This is a case brought under the Americans with Disabilities Act (ADA) arising out of plaintiff's termination from employment with defendant. For the following reasons, the motion is GRANTED.

### Facts

Plaintiffs Jonathan Keith Blazek and Donna Blazek filed their Complaint against defendant City of Lakewood asserting five claims based on Jonathan Blazek's termination from employment.  Count One alleges a violation of the ADA.  Count Two alleges handicap discrimination under Ohio Revised Code § 4112.  Count Three alleges negligent infliction of

1

emotional distress. Count Four alleges wrongful discharge. Count Five alleges loss of consortium.

Plaintiff Jonathan Blazek (hereafter, plaintiff) began working for the City of Lakewood in 1988. At the time of his termination he was employed in the Streets-Forestry Department. On March 13, 2012, plaintiff had volunteered to work second shift snow plowing duty. Plaintiff reported for work at 4:00 p.m. He took his lunch break around 7:00 p.m. At that time, on City property, he consumed approximately 21 ounces of Canadian Mist Whiskey which he had brought to work with him. (pltf. depo.)

Jean Yousefi, defendant's Human Resources Director, had previously received a tip from an employee that there was suspicion that plaintiff had been drinking at work. As a result, Yousefi stopped into the City garage around 8:00 p.m. to speak with the workers regarding a change in their winter second shift schedules. After conducting the meeting, Yousefi approached plaintiff and noticed that he was acting suspiciously, had bloodshot eyes, alcohol on his breath, and was in a euphoric mood. Yousefi asked plaintiff whether he had been drinking. When he responded, "No," Yousefi told him that she wanted him to accompany her to the police department for a breathalyzer test. Plaintiff agreed and it was determined that he had a blood alcohol concentration of 0.132. (Yousefi depo.; pltf. depo. Ex. C)

Based on the alcohol findings, Yousefi told plaintiff that she would also send him for a drug test. In response to Yousefi's inquiry, plaintiff told her that he was taking a prescription medication, Suboxone. Plaintiff had not previously reported this to defendant. Plaintiff was taken to Lakewood Hospital for the drug test. (Yousefi depo.)

2

By letter of March 14, 2012, plaintiff was given notice by the City of a pre-disciplinary meeting. Defendant notified plaintiff of the allegations: "intoxication at work (BAC 132), driving a city vehicle while intoxicated, drinking at work, and alcohol on City property."  The notice stated that City drivers are prohibited from possessing alcohol while on duty or operating a "CMV," and are required to report the use of controlled substances to the driver's supervisor.  (pltf. depo. Ex. D) Following the hearing, plaintiff was terminated by letter of March 19, 2012.  The letter stated the reason for termination as the violation of City policies prohibiting intoxication at work, driving a City vehicle while intoxicated, drinking at work, and possession of alcohol on City property.  (*Id.* Ex. E)

As a result of his termination, the union filed a grievance on plaintiff's behalf.  An arbitrator issued a written decision finding that the City had just cause in terminating plaintiff. (Doc. 16 Ex. A)   Plaintiff also filed a charge of discrimination with the Ohio Civil Rights Commission which found no probable cause. (pltf. depo.)

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,

3

> together with affidavits," if any, which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

While defendant moves for summary judgment on all five of plaintiff's claims,

plaintiff responds only to the ADA argument.  Therefore, the Court finds defendant's argument and evidence undisputed and grants summary judgment on those claims for the reasons stated by defendant. [1]  Accordingly, only the ADA claim remains (Count One).

The Complaint asserts two violations of the ADA: termination and failure to accommodate.

**(1) termination**

The Sixth Circuit has recently restated the requirements for establishing a prima facie case of ADA discrimination through indirect evidence.  Plaintiff must show that 1) he is disabled, 2) he is otherwise qualified for the position, with or without reasonable accommodation, 3) he suffered an adverse employment action, 4) the employer knew or had reason to know of his disability, and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *White v. Standard Ins. Co.*, --- Fed.Appx. ----, 2013 WL 3242297 (6th Cir. 2013) (citing *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir.2007), rev'd in part on other grounds, *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314–17, 321 (6th Cir.2012) (en banc) (holding that the ADA prohibits discrimination that is a "but-for" cause of the employer's adverse action, overruling *Monette v. Elec. Sys. Corp.*, 90 F.3d 1173, 1177–78 (6th Cir.1996), which held that an ADA plaintiff must establish that his employer's adverse action was taken "solely" on the basis of

---

[1] Additionally plaintiff alleges disability discrimination under the ADA and Ohio's anti-discrimination statute.  "Sixth Circuit law provides the general standards and applicable analysis for both the federal and state disability discrimination claims." *Seitz v. Lane Furniture Industries, Inc.*, 2008 WL 4346439 (N.D.Ohio 2008) (citations omitted).

his disability).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to offer a nondiscriminatory reason for the discharge. If the employer satisfies this burden, the plaintiff must introduce evidence from which a reasonable jury could conclude that the proffered explanation is actually a pretext for unlawful discrimination. *James v. Goodyear Tire & Rubber Co.,* 354 Fed.Appx. 246 (6th Cir. 2009) (citations omitted).

Defendant argues that plaintiff cannot satisfy the prima facie case because he has not established that he was disabled or that he was qualified for the position. In response, plaintiff only argues that he had a disability, i.e., alcoholism, that defendant knew about it, and that defendant treated him differently from other employees who received Last Chance Agreements.

Alcoholism is considered an impairment under the ADA. *Moorer v. Baptist Memorial Health Care System,* 398 F.3d 469 (6th Cir. 2005). "However, merely having an impairment does not make one disabled for purposes of the ADA; a plaintiff must also show the impairment substantially limits a major life activity." *MX Group, Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002) (citations omitted).  Even assuming he was disabled, plaintiff fails to satisfy the prima facie case or show pretext.

Defendant argues that plaintiff was not qualified for the position based on the following. Plaintiff's position required that he maintain a commercial driver's license (CDL). Plaintiff testified that he knew that maintaining a CDL is a "central requirement" of his job, and that it is necessary for everyone in his position to operate commercial equipment. (pltf. depo. 23) Plaintiff further admitted that without his CDL he could not do his job. (*Id.* 24) The

U.S. Code of Federal Regulations prohibits an individual with a commercial driver's license from reporting for duty or remaining on duty with a blood alcohol concentration of 0.04 or greater, from using alcohol while performing a "safety-sensitive" function, and from performing a safety-sensitive function within four hours after using alcohol. (49 CFR. §382.201; 49 CFR §382.205; 49 CFR §382.207) By testing positive for alcohol with a blood alcohol concentration over six times the limit permitted under the Code of Federal Regulations, and admitting to drinking while on duty, the City removed plaintiff from his driving position. "No driver shall perform safety-sensitive functions, including driving a commercial motor vehicle, if the driver has engaged in conduct prohibited by subpart B of this part or an alcohol or controlled substance rule of another DOT agency." 49 CFR §382.501.

This Court must consider whether plaintiff had the minimum objective criteria for his position and not the non-discriminatory reason for his discharge (being intoxicated at work and operating a city vehicle while intoxicated) which rendered plaintiff no longer qualified. *See Gaglioti v. Levin Group, Inc.,* 508 Fed.Appx. 476 (6th Cir. 2012).  Thus, the Court assumes plaintiff was qualified for the position.

Plaintiff's only argument as to his termination is that he "received disparate treatment from other employees who were disciplined for alcohol-related incidents" in that at least 15 other such City employees (specifically identified by plaintiff) received Last Chance Agreements while plaintiff did not.  The final element of the prima facie case "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Jones v. Potter,* 488 F.3d 397 (6th Cir. 2007) (citing *Talley v. Bravo Pitino Rest.,*

7

*Ltd.*, 61 F.3d 1241, 1246 (6th Cir.1995)).

>Plaintiff submits his affidavit wherein he avers,
>
>I believe that I received disparate treatment from other employees who also suffered from alcoholism, as evidenced by the fact that numerous other employees, including some on Ms. Yousefi's watch, were given Last Chance Agreements in order to keep their jobs.  As Ms. Yousefi stated in her deposition of June 25, 2013, I could have been offered a Last Chance Agreement, just as other employees who committed same or similar infractions were offered Last Chance Agreements.

(pltf. aff. ¶ 6)

Plaintiff does not demonstrate that the 15 employees whom he identifies are *non-protected*.  In fact, plaintiff seems to assume that they all had alcohol or drug problems and he avers that they "also suffered from alcoholism."  Nevertheless, plaintiff fails to demonstrate that the employees were similarly situated in all respects as he is required to do.  To be considered similarly situated, "the individuals with whom plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subjected to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992).

Yousefi testified that 13 out of the 15 individuals that plaintiff seeks to establish as similarly situated employees were under different City administrations and their situations occurred prior to her employment as the City's Human Resources Director. (Yousefi Depo. at 38-92)  Thus, 13 out of the 15 identified employees did not deal with the same supervisor.  Moreover, as to the two employees who were given Last Chance Agreements under Yousefi's direction, the factual circumstances were different.  According to Yousefi, the one employee had not received his assignment for the day when he tested positive for alcohol.  His position

8

did not require a CDL and he never operated a city vehicle while under the influence of alcohol. As to the second employee, he tested positive for marijuana in a random drug screening and was not intoxicated at work. Therefore, the employees did not engage in the same conduct as plaintiff.

For these reasons, plaintiff fails to establish a prima facie case.

Even assuming plaintiff satisfied the prima facie case, plaintiff has not disputed that defendant had a legitimate, non-discriminatory reason for the termination. As stated previously, plaintiff was terminated for violating the City's policies regarding alcohol use. In fact, plaintiff admitted that he violated the policies by drinking extreme amounts of alcohol during his snow plow shift on City property. "[T]he ADA specifically provides that an employer may hold an alcoholic employee to the same performance and behavior standards to which the employer holds other employees 'even if any unsatisfactory performance is related to the alcoholism of such an employee.' " *Maddox v. University of Tennessee,* 62 F.3d 843 (6th Cir. 1995) (quoting 42 U.S.C. § 12114(c)(4)), abrogated on other grounds by *Lewis v. Humboldt Acq. Corp.,* 681 F.3d 312 (6th Cir. 2012).

For these reasons, plaintiff fails to show an issue of fact arising out of his termination.

**(2) failure to accommodate**

Plaintiff next asserts that defendant failed to accommodate him by offering him a non-driving position. Plaintiff submits his affidavit wherein he avers, "[H]e requested an accommodation for his disability by taking a non-driving position for the city, and Lakewood could have accommodated his disability by placing him in a non-driving position. The openings of non-driving positions were testified to by Mr. Beno at my union grievance

9

arbitration.  The positions were in the waste water treatment department and the refuse department."  (pltf. aff. ¶ 8)

In order to establish a prima facie case of disability discrimination under the ADA for failure to accommodate, plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Melange v. City of Center Line,* 482 Fed.Appx. 81 (6th Cir. 2012) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 Fed.Appx. 974 (6th Cir.2011).

Even assuming plaintiff was disabled, this claim fails because there is no evidence that he requested the accommodation until after he was terminated.  In *Melange, supra,* the court recognized that the prima facie case fails where the plaintiff cannot show that he requested a reasonable accommodation prior to his termination.  "The employee bears the burden of requesting a reasonable accommodation."  *Id.* (citing *Johnson*, 443 Fed.Appx. at 983) "Once the employee requests an accommodation, the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.' " *Id.* (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir.2007)).  "But if the employee never requests an accommodation, the employer's duty to engage in the interactive process is never triggered."  *Id.* (citing *Lockard v. Gen. Motors Corp.,* 52 Fed.Appx. 782, 788 (6th Cir.2002)).

Jean Yousefi avers that plaintiff

10

> never requested an accommodation until the grievance of his termination, subsequent to the decision to terminate him. During the grievance Mr. Blazek, through his union representative requested an accommodation by way of a Last Chance Agreement, and transfer to a non-driving position. The request to move Mr. Blazek would have required the City to create a position for Mr. Blazek, as there was no such positions available at that time.

(Doc. 23 Ex. 1) This evidence is not controverted. The arbitration hearing was held in August and September 2012. Plaintiff was terminated in March 2012. It is undisputed that plaintiff did not request an accommodation prior to his termination. Therefore, he fails to establish a prima facie case of failure to accommodate.

### **Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/9/13